**Brigitte VOSSE, Plaintiff,**

v.

**THE CITY OF NEW YORK; Robert D. Limandri, as Commissioner of the New York City Department of Buildings, Defendants.**

**12 Civ. 8004 (JSR)**

United States District Court, S.D. New York.

Signed November 18, 2015

---

Gideon Orion Oliver, Gideon Orion Oliver, Timothy L. Collins, Collins, Dobkin & Miller L.L.P., New York, NY, for Plaintiff.

Christina Lee Hoggan, New York City Law Department, New York, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, UNITED STATES DISTRICT JUDGE.

On remand before this Court is plaintiff Brigitte Vosse's suit against the City of

New York and Robert D. Limandri, as Commissioner of the New York City Department of Buildings, for violating her First Amendment rights. In late 2010, Vosse affixed an illuminated peace symbol to the window frame of her seventeenth-floor condo in the storied Ansonia building on the Upper West Side of Manhattan.[1] Vosse was fined $800 for displaying the symbol in violation of a City zoning ordinance that generally prohibits illuminated signs from "extend[ing] above curb level at a height greater than ... 40 [feet]" in certain districts, including Vosse's. N.Y.C. Zoning Resolution ("Z.R.") § 32–655.[2] Seizing on a separate provision of the Zoning Resolution that creates an exemption from the height restriction for "flags, banners or pennants ... located on any zoning lot used primarily for community facility uses of a civic, philanthropic, educational or religious nature," *id.* § 32–62, Vosse argued that the City had placed a content-based restriction on her speech in violation of the First Amendment. On August 1, 2013, after full briefing and oral argument, this Court issued a "bottom-line" order denying plaintiff's motion for summary judgment and granting defendants' cross-motion. ECF No. 24. In a Memorandum Order docketed on November 8, 2013, the Court explained that its ruling hinged on its conclusion that Vosse lacked standing to bring a content-based discrimination challenge.[3] ECF No. 25.

In a Summary Order issued on January 12, 2015, the U.S. Court of Appeals for the Second Circuit affirmed this Court's ruling. Vosse then filed a petition for rehearing on the ground that this Court and the Second Circuit had not addressed Vosse's alternative argument that, even it content-neutral, the challenged regulation was not a reasonable "time, place, and manner" restriction on speech. In a Summary Order issued on February 27, 2015, the Second Circuit granted Vosse's petition for rehearing, once again affirmed this Court's decision as to Vosse's lack of standing to raise a claim of content-based discrimination, and remanded with the instruction that this Court address Vosse's alternative argument that, "irrespective of content, the City's zoning regulations constitute[ ] an unduly restrictive time, place, [and]

---

1. The Court feels compelled to note that many legendary members of the New York Yankees called the Ansonia home in the first half of the twentieth century, including Wally Schang, Bob Meusel, and, most notably, Babe Ruth, who moved in after the Boston Red Sox sold his contract to the Yankees in 1919. (The notorious "Black Sox" scandal, in which certain players on the 1919 Chicago White Sox allegedly conspired with mobsters to fix the World Series, was also hatched at the Ansonia.) Of course, some lesser lights also lived at the Ansonia, such as Igor Stravinsky, Sergei Rachmaninoff, Gustav Mahler, and Theodore Dreiser. *See* Steven Gaines, *The Building of the Upper West Side*, New York Magazine (May 16, 2005), *available at* http://nymag.com/nymetro/realestate/features/1871/. There is no reliable evidence that Hillary Clinton or Donald Trump resided at the Ansonia.

2. While Z.R. § 12–10 defines "sign" broadly to include, *inter alia*, "any writing ..., pictorial representation ... or any other figure of similar character, that ... is visible from outside a building," it entirely exempts "non-illuminated signs containing solely non-commercial copy with a total surface area not exceeding 12 square feet" from the provisions of the Zoning Resolution. Z.R. § 12–10. An "illuminated sign," in turn, is defined as a "sign designed to give forth any artificial light or reflect such light from an artificial source." *Id.*

3. Specifically, the Court held that because plaintiff did not contend that her illuminated sign was a flag, banner, or pennant, plaintiff's injury was not redressable by a favorable ruling nor fairly traceable to the alleged constitutional defects in the Zoning Resolution. *See* Memorandum Order dated November 8, 2013 at 5–7.

manner restriction on speech." ECF No. 31. *After* supplemental briefing and upon consideration, the Court finds that they do not.[4]

■ It is well-settled that "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). While a time, place, or manner regulation may not "burden substantially more speech than is necessary to further the government's legitimate interests," such a regulation need not be "the least restrictive or least intrusive means of" promoting the government's interest. *McCullen v. Coakley*, — U.S. ——, 134 S.Ct. 2518, 2535, 189 L.Ed.2d 502 (2014). "[T]he essence of time, place, or manner regulation lies in the recognition that various methods of speech, regardless of their content, may frustrate legitimate governmental goals. No matter what its message, a roving sound truck that blares at 2 a.m. disturbs neighborhood tranquility." *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980).

■ The issue before the Court is whether Z.R. § 32–655's prohibition on signs extending more than 40 feet above curb level is a reasonable time, place, and manner restriction on speech. As a threshold matter, the Court notes that, per the Second Circuit's Summary Order, Vosse has no standing to challenge § 32–655 as content-based and that this Court's mandate is to evaluate the regulation "irrespective of content." Thus, appropriately, Vosse does not argue on remand that the Zoning Resolution is, in relevant part, content-based.[5]

■ Rather, Vosse contends that the City has failed to show "that any sufficiently real and significant governmental interest(s) would be served . . . by banning non-commercial illuminated signs in residential windows, such as . . . Ms. Vosse's." Pl.'s Suppl. Br., ECF No. 32 at 7. The City responds that the prohibition on illuminated signs more than 40 feet above curb level "further[s] the government's legitimate interests in preserving neighborhood character and an aesthetically pleasing landscape," staving off the specter of "miniTimes Squares." Defs.' Suppl. Br., ECF No. 33 at 5. Indeed, it is well-established that preserving and advancing the aesthetics of a city constitutes a "substantial governmental goal[ ]." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *see also Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) ("[T]he city's interest in at-

---

**4.** A fuller discussion of the facts of this case may be found in the Court's Memorandum Order dated November 8, 2013, familiarity with which is here presumed.

**5.** The Court is aware that the Supreme Court recently found a town's comprehensive sign code to be unconstitutionally content-based on its face because it applied different restrictions to signs depending on, *inter alia*, wheth-

er the sign fell into the category of "Ideological Signs," "Political Signs," or "Temporary Directional Signs Relating to a Qualifying Event." *Reed v. Town of Gilbert, Ariz.*, — U.S. ——, 135 S.Ct. 2218, 2224–25, 192 L.Ed.2d 236 (2015). *Reed* does not bear on the issue before this Court, however, because Vosse is precluded from challenging the Zoning Resolution as impermissibly content-based.

tempting to preserve the quality of urban life is one that must be accorded high respect."); *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 129, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ("[T]his Court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city."). [6] It is equally well–established that "signs ... pose distinctive problems that are subject to municipalities' police powers" and that "governments may regulate the physical characteristics of signs." *City of Ladue v. Gilleo,* 512 U.S. 43, 48, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

The issue, then, for the Court is whether § 32–655 is narrowly tailored to achieve this result. The Court finds that it is. Significantly, the City's Zoning Resolution does not sweepingly prohibit the displaying of all signs more than 40 feet above curb level in the districts at issue. Rather, it permits the displaying of "non-illuminated signs containing solely non-commercial copy with a total surface area not exceeding 12 square feet." [7] Z.R. § 12–10. The relevant restriction on speech is thus only triggered when signs are displayed above a certain height and it excludes from its scope non-illuminated, non-commercial signs less than 12 square feet in surface area. Thus, § 32–655 is narrowly tailored to serving the City's significant interests in maintaining an aesthetically pleasing cityscape and preserving neighborhood charac-

ter, and does not "burden substantially more speech than is necessary to further" those legitimate government interests. *McCullen,* 134 S.Ct. at 2535; *see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 810, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding a Los Angeles ordinance that prohibited the posting of signs on public property because "the substantive evil—visual blight—is not merely a possible by-product of the activity, but is created by the medium of expression itself. ... [T]herefore, the application of the ordinance in this case responds precisely to the substantive problem which legitimately concerns the City [and] curtails no more speech than is necessary to accomplish its purpose.").

While Vosse asserts that the City could have adopted a less restrictive regulation to achieve its goal—for example, by distinguishing between the degree or methods of illumination—the narrowly tailored standard does not require "that there be no conceivable alternative, but only that the regulation not burden substantially more speech than is necessary to further the government's legitimate interests." *Board of Trustees of State University of New York v. Fox,* 492 U.S. 469, 478, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (internal quotation marks omitted). As such, the fact that conceivable, somewhat less restrictive alternatives might perhaps exist does not alter the Court's judgment. It was reasonable for the City to prohibit all

---

**6.** In addition, plaintiff herself, in defending against the City's Notice of Violation, recognized that "the City's interest in safety and aesthetics is significant." Decl. of Plaintiff Brigitte Vosse, Ex. D, ECF No. 11–4 at 7.

**7.** It is true, as Vosse stresses, that "[e]xemptions from an otherwise legitimate regulation of a medium of speech may ... diminish the credibility of the government's rationale for restricting speech in the first place." *City of*

*Ladue v. Gilleo,* 512 U.S. 43, 52, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). But that is not the case here, where an illuminated or commercial sign that is displayed more than 40 feet above curb level may reasonably be considered to present a greater threat to aesthetics and neighborhood character than a non-illuminated, non-commercial sign that is less than 12 square feet in surface area. The City should not be penalized for attempting to narrowly tailor its regulation of speech.

illuminated signs above a certain height to achieve its legitimate governmental interests rather than attempt to distinguish between degrees and methods of illumination, which would not only likely pose practical problems with respect to enforcement but also constitute a less effective means of furthering the City's stated goals.

Finally, the Court finds that § 32–655 "leave [s] open ample alternative channels for communication of the information." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746. The parties agree that had Vosse's sign been non-illuminated, it would have fallen outside the scope of § 32–655, as it is less than 12 square feet in surface area and does not contain commercial copy. *See* Pl.'s Suppl. Br. at 3; Defs.' Suppl. Br at 9. That the regulation at issue does not prohibit all non-commercial signs, but rather regulates the form and size of the sign (as opposed to the message contained therein) is strong evidence that the regulation leaves open ample alternatives for communication.

Plaintiff relies heavily on the Supreme Court's decision in *City of Ladue,* which held that an ordinance that banned all residential signs except "residence identification" signs, "for sale" signs, and signs warning of safety hazards violated the First Amendment guarantee of free speech. 512 U.S. at 45, 58–59, 114 S.Ct. 2038. Though the Court recognized the City of Ladue's legitimate interest in preventing "visual clutter," it found that the ordinance at issue was not a reasonable time, place, or manner restriction because it was not "persuaded that adequate substitutes exist for the important medium of speech that Ladue ha[d] closed off" and because "Ladue ha[d] almost completely foreclosed a venerable means of communication that is both unique and important." *Id.* at 54, 56, 114 S.Ct. 2038. Here, by contrast, the City has not completely foreclosed residents' ability to display signs more than 40 feet above curb level. To the contrary, as noted, residents are broadly permitted to display non-commercial signs so long as they are non-illuminated and less than 12 square feet in surface area.

While Vosse complains that her peace symbol would be functionally invisible if not illuminated, that contention is not supported by the record, which includes a grainy, black-and-white picture in which the peace sign is visible. *See* ECF No. 11–4 at 9. In any case, even if the sign were not visible from street level unless illuminated, Vosse is not entitled to an adequate alternative that provides the same audience or impact as would be ideal from her perspective. *Ward,* 491 U.S. at 802, 109 S.Ct. 2746 ("That the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate."). Rather, the key question is whether Vosse would retain adequate alternatives. The Court finds, even on this hypothetical scenario, that she would. To give just a few examples, Vosse could display a banner across her window with a pictorial representation of the peace symbol or the word "PEACE" itself. That Vosse has such alternatives reinforces the Court's conclusion that the City has not unconstitutionally abridged Vosse's First Amendment freedoms, but rather acted reasonably and narrowly to achieve legitimate governmental interests.

The Clerk of the Court is hereby directed to enter final judgment dismissing the complaint with prejudice, and to close the case.

SO ORDERED.